UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE WEEKS PARKER,

     Plaintiff,

v.                           CASE No. 8:12-CV-1919-T-24TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

     Defendant.

_____

REPORT AND RECOMMENDATION

     The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, I recommend that the decision be affirmed.

_____

     [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

     [2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was forty-five years old at the time of the administrative hearing, and who has a college education, has worked as a sales representative and mortgage loan originator (Tr. 68, 127). He filed a claim for Social Security disability benefits, alleging that he became disabled due to a back injury, herniated disc, low back problems, neck injury, and high cholesterol (Tr. 126). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease, hyperlipidemia, major depressive disorder, and anxiety (Tr. 30). He concluded that the plaintiff (Tr. 33):

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to lifting 20 pounds occasionally and 10 pounds frequently; sit up to 6 hours per day; stand/walk up to 6 hours per day; simple routine tasks; ordinary and routine changes in work settings or duties; and no rapid production rate, pace, or quotas. The claimant can have frequent interaction with the public, coworkers, and supervisors and can maintain and concentrat[e]

for two hours at a time, but then needs a ten-minute
break.

The law judge ruled that, with these limitations, the plaintiff was unable to
perform any past relevant work (Tr. 36). However, based upon the testimony
of a vocational expert, the law judge found that the plaintiff could perform
jobs that exist in significant numbers in the national economy, such as sales
attendant, fast food worker, and courier (Tr. 37-38). The law judge therefore
decided that the plaintiff was not disabled (Tr. 38).

The plaintiff sought review from the Appeals Council (Tr. 1, 7-
13). He submitted to the Appeals Council additional evidence consisting of
treatment records from Coastal Behavioral Healthcare, Inc., and Sarasota
Memorial Hospital (see Tr. 1, 2, 4). The Appeals Council stated that it
considered the records from Coastal Behavioral Healthcare but found that
"this information does not provide a basis for changing the Administrative
Law Judge's decision" (Tr. 1, 2). Further, the Appeals Council indicated that
the information from Sarasota Memorial Hospital, which concerns treatment
in September and October 2011, does not affect whether the plaintiff was
disabled during the alleged disability period because it concerns treatment
many months after the date of the law judge's decision (Tr. 2). Consequently,

the Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts three challenges, with several subparts, to the law judge's decision.  None is meritorious.

A.  The plaintiff contends first that the law judge failed to incorporate into the plaintiff's residual functional capacity the entire opinion of treating physician Dr. Henry B. Ehrlich, or give reasons for partially rejecting that opinion (Doc. 10, p. 11-15).

Dr. Ehrlich, the plaintiff's treating psychiatrist, opined in a Medical Source Statement (Mental) that the plaintiff was moderately impaired in his ability to (Tr. 311):

> maintain attention and concentration for more than 10 minutes, perform activities within a schedule, maintain regular attendance, sustain routine without special supervision or reminders, work in coordination with or proximity to others without being distracted by them, and respond appropriately to supervisors, coworkers and usual work situations.

Dr. Ehrlich opined further that the plaintiff had moderately severe limitations in: completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; appropriately interacting

with the general public; and dealing with changes in a work setting (id.).[3] On the other hand, Dr. Ehrlich opined that the plaintiff had no impairment in his ability to understand and remember simple instructions and only a mild impairment in carrying out simple instructions (id.). At the bottom of the form, Dr. Ehrlich wrote "Dx major depression" (id.). Significantly, Dr. Ehrlich did not date the Medical Source Statement or opine on the duration of these limitations.

The law judge acknowledged that Dr. Ehrlich opined in a Medical Source Statement that the plaintiff had moderate or moderately severe limitations in most work categories (Tr. 36). Further, the law judge contrasted Dr. Ehrlich's opinion with those of the nonexamining reviewing psychological consultants who opined that the plaintiff's mental impairments were not severe, stating (id.):

> [i]n that regard, the State agency psychological consultant's opinions are afforded  little weight. Dr. Ehrlich's opinion, however, is afforded more weight, as it is generally consistent with the medical evidence. Accordingly, the undersigned has incorporated appropriate limitations into the

---

[3]Moderate, according to Medical Source Statement, means that the claimant is able to perform the designated task or function, but has or will have noticeable difficulty doing so from 11-20 percent of the workday or workweek (Tr. 311). For moderately severe impairments, the difficulty is more than 20 percent of the workday or workweek (id.).

> claimant's residual functional capacity. Specifically, the undersigned has limited the claimant to simple routine tasks and no rapid production, rate, pace or quotas.

Thus, it is clear from the decision that the law judge did not accept in its entirety Dr. Ehrlich's opinion of the plaintiff's functional limitations (id.).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Initially, it is noted that Dr. Ehrlich's assessment is conclusory in nature. Thus, Dr. Ehrlich's opinion merely consists of checkmarks on a form and the comment "Dx major depression" (Tr. 311). A diagnosis, however, does not indicate the severity of an impairment, see Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005), and Dr. Ehrlich did not explain in any meaningful way his opinion of functional limitations. For example, there is no explanation regarding why the plaintiff's limitation in

interacting with the public is "moderately severe" (Tr. 311). An explanation for this opinion is especially important considering the plaintiff's representations that he does not have "any problems getting along with family, friends, neighbors or others" and comments by consultative psychologist Dr. Ida M. Ewen and a Social Security representative that the plaintiff was "pleasant" (Tr. 145, 159, 238). Furthermore, Dr. Ehrlich's opinion that the plaintiff is moderately limited in his ability to maintain attention and concentration for "more than 10 minutes" (Tr. 311) is not consistent with the plaintiff's statements that he can pay attention for 1 hour and that he spends "all day" on the computer and watching television (Tr. 158, 159). Therefore, the conclusory nature of Dr. Ehrlich's opinions alone provides a recognized basis for discounting the assessment. Lewis v. Callahan, supra, 125 F.3d at 1440.

Additionally, Dr. Ehrlich's sparse treatment notes do not substantiate his opinion of substantial functional limitations (see Tr. 312-15). See Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 740 (11th Cir. 2008) (lack of supporting medical records may be considered in rejecting the treating physician's opinion). Thus, Dr. Ehrlich's records consist of: (1) a progress note which lists in a cursory manner

physical and mental impairments and medications; (2) the plaintiff's checklist of complaints; and (3) Dr. Ehrlich's provisional diagnosis of "MDD [major depressive disorder]" (see Tr. 312-15). Dr. Ehrlich does not discuss in the progress notes the plaintiff's symptoms or opine as to any mental functional limitations (see id.). Therefore, Dr. Ehrlich's opinions of functional limitations are not supported by his medical records, either. Lewis v. Callahan, supra, 125 F.3d at 1440.

In short, Dr. Ehrlich did not provide a satisfactory explanation for his opinion. Consequently, the conclusory nature of his assessment is sufficient in itself to discount Dr. Ehrlich's opinions. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory"); 20 C.F.R. §404.1527(c)(3)("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Nonetheless, the law judge incorporated into the residual functional capacity those mental limitations opined by Dr. Ehrlich and others that he found were supported by the record. Specifically, the law judge found that, due to the plaintiff's severe impairments of major depressive order and

anxiety, the plaintiff had mild restriction in activities of daily living and social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 30, 32). In order to accommodate these mental limitations, the law judge restricted the plaintiff to (Tr. 33):

> simple routine tasks; ordinary and routine changes in work settings or duties; and no rapid production, rate, pace, or quotas. The claimant can have frequent interaction with the public, coworkers and supervisors and can maintain and concentrat[e] for two hours at a time, but then needs a ten-minute break.

To the extent that the law judge's findings are less restrictive than those opined by Dr. Ehrlich, the law judge explained the reasons for his findings. Therefore, the plaintiff's contention that the law judge failed to provide "any reasons whatsoever" (Doc. 10, p. 15) for rejecting the more restrictive limitations opined by Dr. Ehrlich is incorrect.

Thus, the law judge explained that he found the plaintiff had only mild restrictions in activities of daily living because the plaintiff lives in his own home with two children, is able to attend to his personal needs, cook his own meals, drive, and go shopping (Tr. 32, 33, 35; citing Exs. 4E, 5E). Additionally, the plaintiff (and consultative psychologist Dr. Ewen) stated he

is capable of managing his own finances (Tr. 157, 239).  The law judge also noted that the plaintiff attributed any difficulties with activities of daily living to his physical, not mental, ailments (Tr. 32, citing Ex. 4E; see also Tr. 156-57).

Further, the law judge explained that he found the plaintiff had only mild limitations in social functioning because, despite the plaintiff's testimony that he is nervous around people and isolates himself, the plaintiff acknowledges interacting with others on a daily basis (Tr. 32, citing Ex. 5E). In this connection, the law judge noted that the plaintiff communicates with others each day at least by e-mail and text messages, and he regularly spends time with his teenage children. The plaintiff also testified at the hearing that he telephones his friends "a lot," and that he gets together with them "[t]hree to four times a week," either at his or their homes (Tr. 63).

Further, the law judge recounted Dr. Ewen's report that the plaintiff was able to interact appropriately and could modulate his moods during social interaction, and Dr. Ewen's observations that the plaintiff's demeanor was pleasant and he was generally cooperative and compliant during the evaluation (Tr. 32; see Tr. 237-39). Dr. Ewen opined further (Tr. 239):

> [The plaintiff] is able to properly communicate his
> needs to others. His verbal communications are
> aggressive and/or appropriate. He has adequate
> coping skills available. [The plaintiff] appears to
> have a good sense of social propriety. He is able to
> appropriately interpret social situations, and, as a
> result, he should be able to conduct routine social
> interchanges.

Dr. Ewen's opinion is also consistent with the social security

representative's comment that the plaintiff was "very pleasant" during his

interview and Dr. Iraj Golzari's notation that the plaintiff was cooperative

during his physical evaluation of the plaintiff (Tr. 145, 293). In sum, there

is ample evidence supporting the law judge's finding that the plaintiff's social

functioning is only mildly impaired.

With regard to concentration, persistence or pace, the law judge

found that the plaintiff had moderate difficulties (Tr. 32). In this regard, the

law judge acknowledged the plaintiff's testimony that he is unable to read,

write, or do basic math due to difficulties with concentration (id.). However,

the law judge found these allegations were not fully credible and that the

plaintiff's difficulties in this area were moderate (id.). This finding is

supported by substantial evidence. Thus, Dr. Ewen observed during the

evaluation that the plaintiff "appeared to maintain good interest in the assessment procedures" (Tr. 237) and that the plaintiff (Tr. 238):

> was able to correctly identify similarities between words and to identify dissimilarities between words. He was able to complete serial sevens backward subtractions from 100 to 51 with no errors. He was able to correctly interpret common proverbs. He correctly wrote a simple sentence of five words. He was able to correctly copy a simple design consisting of two overlapping five sided figures. He correctly repeated 5 digits forward and 5 digits backward.

Further, Dr. Ewen opined that the plaintiff's memory functioning was intact as to both long and short term recollection, he was goal-directed, and "appears able to concentrate on tasks requiring immediate attention" (Tr. 238, 239; see also Tr. 292 (Dr. Golzari observed that the plaintiff's memory was intact)). The plaintiff's hobbies of "following the stock market and coaching sports," and his daily activities of watching television and using the computer "all day" (Tr. 154, 158, 173, 236, 333) further support the finding that the plaintiff's concentration, persistence or pace deficits are no more than moderate.

Notably, the plaintiff stated (repeatedly) during the application process that his disability claim was based on physical impairments, not

mental impairments. <u>See</u> Tr. 145 (plaintiff told a Social Security representative that "he could no longer find any work and that he could not do any physical labor because of his back problems"); Tr. 235 (plaintiff told Dr. Ewen that he applied for disability due to back problems and that attempts to return to work were unsuccessful due to his physical pain); Tr. 292 (plaintiff told Dr. Golzari that he was unemployed due to "back pain").

The plaintiff argues Dr. Ehrlich's opinion that the plaintiff would have moderately severe difficulty interacting with the public and moderate difficulty in responding to and working with supervisors or coworkers "is not inconsistent with the other evidence of record" (Doc. 10, p. 13). The issue, however, is not whether there is evidence that could support a contrary finding, but rather whether the plaintiff has presented evidence that compels the conclusion that the plaintiff's mental limitations are greater than found by the law judge. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027. The plaintiff has failed to do that.

In this regard, the plaintiff cites to Dr. Ewen's comment that the plaintiff experienced "frequent conflict when interacting with the environment" and maladaptive behaviors (Doc. 10, p. 13, <u>citing</u> Tr. 238). However, Dr. Ewen also opined that the plaintiff "has a good sense of social

propriety," "is able to appropriately interpret social situations," and "he should be able to conduct routine social interchanges" (Tr. 239). Therefore, Dr. Ewen's opinion as to the plaintiff's overall social functioning supports the law judge's finding that the plaintiff is only mildly impaired in this area.

The plaintiff also emphasizes his hearing testimony that he gets nervous around people and does not want to be around them (Doc. 10, p. 13). However, as discussed <u>infra</u>, pp. 20-34, the law judge did not find the plaintiff fully credible, so he was not compelled to accept those statements in determining the plaintiff's mental residual functional capacity. Rather, the law judge could reasonably find that the evidence supports a finding that the plaintiff's social functioning was only mildly impaired, especially considering the plaintiff's statements that he speaks with his friends daily, visits with them several times a week, and does not have "any problems getting along with family, friends, neighbors or others" (Tr. 63, 159).

Finally, the plaintiff argues that Dr. Ehrlich's opinion should have been accepted in its entirety because it is purportedly consistent with the opinion of psychiatrist Dr. Paul Retfalvi (Doc. 10, p. 14). Dr. Retfalvi conducted a psychiatric evaluation of the plaintiff at Coastal Behavioral Healthcare, Inc., on August 30, 2010 (Tr. 367-71). These records were not

before the law judge, but were submitted to the Appeals Council in support of the plaintiff's request for review of the law judge's decision (see Tr. 1-4). The Appeals Council, in denying review, stated that it considered this evidence but found that the information "does not provide a basis for changing the Administrative Law Judge's decision" (see Tr. 1, 2, 4).

Under these circumstances, the plaintiff's reliance upon the opinion of Dr. Retfalvi to challenge the law judge's decision is misplaced. In this case, the plaintiff has not articulated any challenge to the decision of the Appeals Council to deny review. The Eleventh Circuit has stated that "[w]e understand Falge [v. Apfel, 150 F.3d 1320 (11th Cir. 1998)] to hold that when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1266 (11th Cir. 2007). Since there was no challenge to the denial of review by the Appeals Council, the evidence from Dr. Retfalvi, which was first submitted to the Appeals Council, is inapposite.

Furthermore, if there had been a challenge to the Appeals Council's denial of review, that would raise a distinct legal issue. Thus, the

Eleventh Circuit sought to clarify in Ingram v. Commissioner of Social Security Administration, supra, the law concerning the nature and extent of judicial review of new evidence that was first presented to the Appeals Council. In my view, Ingram held that, when the Appeals Council considers new evidence and denies review and the plaintiff challenges that denial of review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008).

Here the plaintiff has neither challenged the Appeals Council's denial of review nor set forth the legal standards that apply to such a challenge. These deficiencies violate the scheduling Order which requires the plaintiff, among other things, to identify with particularity the discrete grounds upon which the administrative decision is being challenged and to cite the governing legal standards of such a challenge (Doc. 9, p. 2). Consequently, a challenge to the Appeals Council's denial of review, which is the only basis for consideration of Dr. Retfalvi's opinion, is properly deemed abandoned.

In addition, even under the plaintiff's mistaken approach that Dr. Retfalvi's opinion could be considered as if it had been submitted timely to the law judge, that opinion, in all likelihood, would not change the law judge's decision. The plaintiff focuses on Dr. Retfalvi's assessment of a Global Assessment of Functioning (GAF) "of [about] 45" and Dr. Retfalvi's opinion that the plaintiff's "cognition was moderately impaired, his insight was superficial and his judgment was moderately impaired" (Doc. 10, p. 14). Notably, the plaintiff makes no argument that the moderate impairments opined by Dr. Retfalvi are not accommodated by the law judge's mental residual functional capacity.

Furthermore, the plaintiff has not shown that there was a reasonable likelihood that Dr. Retfalvi's assessment of a GAF score of about 45 upon intake for crisis stabilization would change the law judge's decision. A single GAF score does not provide solid evidence of a severe mental impairment. See DeBoard v. Commissioner of Social Security, 211 Fed. Appx. 411, 415 (6th Cir. 2006). The five-point increase in the plaintiff's GAF score the following day to "about 50" underscores the fluidity of the GAF score (Tr. 370). Significantly, the Commissioner has declined to endorse the

use of GAF scores in disability determinations. <u>Wind</u> v. <u>Barnhart</u>, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005).

In sum, for the foregoing reasons, the law judge's discounting of Dr. Ehrlich's opinion is reasonable, adequately explained, supported by substantial evidence, and consistent with the governing law. Further, the plaintiff has not identified any evidence which compelled the law judge to accept Dr. Ehrlich's opinion in its entirety. <u>See</u> <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027. Consequently, this finding should not be overturned.

B. Next comes the ubiquitous challenge to a law judge's credibility determination. These tiresome arguments regularly ignore the highly deferential nature of the credibility finding. The law judge is the only person in the review chain that actually sees and hears the plaintiff. Moreover, he is trained in the law in general and in Social Security matters in particular. His duty is to consider the testimony of the plaintiff and other witnesses and give adequate reasons if he discounts that testimony. <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002). His reasons do not have to be compelling or persuasive, simply adequate. <u>Allen</u> v. <u>Sullivan</u>, 880 F.2d 1200, 1203 (11th Cir. 1989). The law judge's lengthy explanation in this case for his credibility determination amply meets that requirement.

The plaintiff testified that he is unable to work due to problems with his back and neck which make it difficult for him to walk, stand, sit and lift (Tr. 50-51). The plaintiff states that he is "always in pain" and also experiences numbness in his legs (Tr. 55, 56). Furthermore, the plaintiff testified that he is not able to "do basic reading and writing" because he cannot concentrate (Tr. 48, 51). The plaintiff added that he feels nervous around people and does not want to deal with anybody, and that he "sit[s] [at home] with the blinds closed much of the time" (Tr. 52, 60, 61). Moreover, the plaintiff complained of side effects from medication (Tr. 52, 58). The law judge did not find the plaintiff's statements fully credible.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce

disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge in this case referred to the pertinent regulation and Social Security Rulings governing the assessment of subjective complaints (Tr. 33). Moreover, he set forth the controlling principles (Tr. 33-34). This demonstrates that he appropriately applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Further, the law judge acknowledged the plaintiff's testimony of disabling functional limitations in his decision (Tr. 32, 33, 34), but found that the plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 34). Notably, the law judge did not totally reject the plaintiff's allegations of functional limitations. Rather, the law judge accepted that the plaintiff had significant limitations due to his physical and mental impairments and accordingly restricted the plaintiff to light exertional work with routine, simple tasks; no rapid production or quotas; only frequent interaction with the public and colleagues; and a concentration limitation of two hours at a time (see Tr. 33).

In addition, the law judge gave a detailed explanation for his

credibility determination (Tr. 34-35):

> In terms of the claimant's alleged neck and back
> pain, sufficient objective medical evidence exists in
> the record to establish that they are, collectively, a
> medically determinable impairment. However, the
> claimant appears to have somewhat exaggerated
> the severity and limiting effects of his impairment.
> ... A magnetic resonance imaging (MRI) of the
> claimant's lumbar spine in 2008 showed small
> osteophytes and a disc protrusion, but revealed no
> compression fracture and no significant alignment
> abnormality (Exhibit 14F).   In 2009, X-rays
> confirmed the small osteophytes along with "mild"
> degenerative changes, but also showed normal
> anatomic alignment and well-maintained disc
> spaces (Exhibit 8F).  In 2010, the claimant had
> MRIs of his lumbar and cervical spine, but neither
> revealed any serious abnormality.  The cervical
> MRI showed degenerative changes with minimal
> endplate spurring, but "fairly normal" disc height
> and signal intensity (Exhibit 17F).   It also
> confirmed no significant disc protrusion, no
> compromise of the thecal sac, neural foramina, or
> nerve roots, and no acute, subacute, or chronic
> bony abnormality (Exhibit 17F). As for the lumbar
> MRI, several abnormalities were found, but they
> were all characterized as "mild" or "small" (Exhibit
> 19F).
>
> Upon examination, the claimant was diagnosed
> with degenerative disc disease (Exhibit 17F).
> However, diagnostic findings have all been
> generally normal.  Since the alleged onset date,
> physical examinations have shown normal strength

and sensation bilaterally in the upper and lower extremities, full range of motion throughout, and intact deep tendon reflexes (Exhibits 9F, 14F). During the consultative examination, the claimant's straight leg raises were negative (Exhibit 9F). The consultative examiner also noted that the claimant did not require the use of an assistive device for ambulation, was able to rise from an armless chair without help, and was able to squat, rise, and get on and off the examination table (Exhibit 9F).

Considering this objective medical evidence, the claimant's credibility regarding the severity and limiting effects of his pain are somewhat doubted. For example, the claimant stated that he "can hardly get out of bed" and that the pain is so severe, he "can't sit at a desk" (Exhibit 1E). The claimant also alleged that he is unable to perform "simple tasks such as walking, lifting and driving" (Exhibit 1E). However, the claimant also reported that he is able to drive and go shopping (Exhibit 5E). Dr. Ewen noted that the claimant appeared "highly invested in portraying himself as incapable" of employment and that his gait and posture were both normal (Exhibit 3F). When considered in light of the medical evidence as a whole, these statements cast doubt on the credibility of the claimant's allegations. In addition, the claimant indicated that he has continued to seek employment by applying for jobs online (Exhibit 3F). This would tend to suggest that the claimant might not feel he is truly incapable of working and that the underlying reason for his disability application may be something other than medical disability. Regardless, the claimant admitted that his

prescription of Lorcet relieved his pain (Exhibit 4E), although he subsequently alleged that his pain had worsened (Exhibit 9E). Accordingly, the undersigned has reduced the residual functional capacity to account for reasonable limitations resulting from the claimant's degenerative disc disease, as supported by the objective medical evidence. In particular, the undersigned has limited the claimant to light exertional work.

....

In sum, the above residual functional capacity assessment is supported by the objective medical evidence which suggests that the limiting effects of the claimant's physical impairments are less severe than the claimant alleges. However, sufficient evidence exists to establish that the claimant's mental condition has at least some effect on the claimant's ability to maintain concentration, persistence or pace. Therefore, the undersigned has reduced the residual functional capacity accordingly.

This explanation is clearly sufficient to discount the plaintiff's testimony of disabling functional limitations. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006). The law judge's credibility finding is also buttressed by the plaintiff's indication during an interview that the bad economy influenced his decision to apply for disability benefits See Tr. 145 (plaintiff told a Social Security representative during an interview that "[h]is past work experience was in sales and the economy

has really taken a toll on that. He said that he could not longer find any work and that he could not do any physical labor because of his back problems").

In order to overcome the law judge's credibility determination, the plaintiff had to show that the evidence compelled a contrary conclusion. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. He has failed to do that.

To begin his argument, the plaintiff asserts that the law judge failed to assess the seven factors set forth in 20 C.F.R. §404.1529(c)(3) for the law judge to consider in determining the credibility of the claimant (Doc. 10, p. 16). The plaintiff cites no authority for a contention that the law judge must discuss each of the factors in his decision. Just as a district judge is not required to address every 18 U.S.C. 3553(a) factor in a guideline sentencing proceeding, United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), there is no reason to require a law judge to discuss each of the §404.1529(c)(3) factors in his decision. Significantly, the law judge expressly stated he considered the plaintiff's symptoms based on the requirements of §404.1529, as well as two Social Security Rulings (see Tr. 33), one of which (Social Security Ruling 96-7p, 1996 WL 374186 at *3 (S.S.A.)) repeats the seven factors. That reference is sufficient to show that the law judge considered the factors. Notably, it is this type of unsupported contention that makes review

of the typical credibility challenge tedious.  Litigating judgment should be exercised to winnow out contentions that are clearly meritless.

The only §404.1529 factors the plaintiff alleges specifically that the law judge failed to consider and, therefore the only two which are considered in accordance with the scheduling Order, are the side effects of medications and pain (Doc. 10, pp. 16-17).  With regard to medication side effects, the law judge acknowledged in the decision the plaintiff's testimony that he "experiences several side effects from his medication, including nausea, insomnia, and daytime drowsiness" (Tr. 34).  Thus, the law judge was clearly aware of the plaintiff's allegations of medication side effects and mentioned them in the decision.  The law judge, however, found that "the limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment" (id.).  The credibility determination, as quoted above, provides several reasons for this determination.  Furthermore, the plaintiff has not cited to any medical records documenting these alleged side effects.[4]  In fact, the plaintiff stated in

---

[4]The plaintiff only cites to his complaint to Coastal Behavioral Center that he had a "terrible reaction to Celexa" and that, after ceasing and restarting Paxil and Wellbutrin, he could not seem to get back to normal (Doc. 10, pp. 16-17).  These vague comments, which do not even identify the alleged side effects, do not show that a reversal of the law judge's decision is warranted.

functional reports that he did not suffer from side effects due to prescription medication, and testified at the hearing that he was even unsure whether his nausea and vomiting was caused by medication side effects or nerves (see Tr. 52, 130, 148, 183). Therefore, the plaintiff's contention that the law judge failed to justify his discounting of the plaintiff's alleged medication side effects is baseless.

Next, the plaintiff argues that the law judge failed to address the plaintiff's complaints of pain to his physician at the Sarasota Pain Management Clinic (Doc. 10, p. 16, citing Tr. 335-36). Specifically, the plaintiff cites to progress notes from June and July 2010 which state that he was still in pain, despite medications (Tr. 335-36). Notably, the plaintiff's physician wrote in the May and July 2010 progress notes that the plaintiff has "good pain control" (Tr. 335, 337). Furthermore, the August 2010 progress note indicated that the plaintiff was merely experiencing "occasional pain low back" (Tr. 334).

The law judge was clearly aware of these records, as he cited to evidence from the Sarasota Pain Management Clinic in his decision (Tr. 35). The law judge was not required to address every progress note from the pain clinic in his decision. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir.

2005). Additionally, the law judge mentioned in his decision the plaintiff's allegation that his pain had worsened despite medication (Tr. 35; see Tr. 183-84). However, the law judge stated that he did not find the plaintiff's complaints of pain fully credible. Therefore, the plaintiff's argument that the law judge did not consider his allegations of continued pain despite medication is meritless.

The plaintiff also makes general and unhelpful criticisms of the law judge's credibility findings. Thus, he complains that the law judge "glossed over" the medical evidence (Doc. 10, p. 16). The lengthy credibility finding previously quoted belies that assertion.

The plaintiff also contends that the law judge's credibility determination is not supported by substantial evidence because it is based on "a selective citation to the evidence of record" (id., p. 17). Of course, the law judge's discussion of the evidence is selective since he could not feasibly recount all of the medical evidence in his decision.

The plaintiff argues, more specifically, that the law judge omitted from his decision MRI findings of abnormalities in the plaintiff's lumbar and cervical spine. For example, the plaintiff quibbles that, when the law judge stated that there were "small osteophytes" in his lumbar spine, the law judge

failed to state that they were "throughout" the plaintiff's lumbar spine (id.).

Additionally, the plaintiff complains that the "disc protrusion" noted by the

law judge was not properly identified as a "broad based disc bulge or

protrusion which is most marked centrally and slightly more to the right of

midline at L4-5 slightly indenting the thecal sac" (id.). The plaintiff argues

further that the law judge failed to include in the decision the radiologist's

impression that he had "spondylosis," and that the disc herniations are "likely

causing discogenic pain" (id., pp. 17, 18).

     The plaintiff, however, does not identify how any of these

findings undermine the law judge's credibility determination. Thus, it is well

recognized that it is the functional impairments, not a diagnosis, that

determines the severity of the impairment. See Moore v. Barnhart, supra, 405

F.3d at 1213 n. 6; McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

The plaintiff does not identify any medical evidence substantiating that these

conditions cause him debilitating limitations. To the contrary, the plaintiff's

findings on physical examination have been essentially normal, except for

some tenderness and muscle spasms. Specifically, medical records document

that the plaintiff has a normal joint range of motion (Tr. 220, 296-98, 330),

normal gait (Tr. 237, 294, 338), normal motor strength (Tr. 294), normal deep

tendon reflexes (Tr. 293, 318), normal sensory system (Tr. 293, 294), no swelling or deformities (Tr. 220, 294, 330), no cyanosis, clubbing or edema (Tr. 220, 294, 325, 330), no muscle atrophy (Tr. 294), no neurological focal deficits (Tr. 220, 330), and negative straight leg lifts (Tr. 318). Further, the consultative examiner observed that the plaintiff was able to rise from an armless chair without assistance, squat and rise, and get on and off the examination table (Tr. 295). Moreover, the nonexamining reviewing physician who considered the 2008 MRI findings opined that the plaintiff's functioning was even less restricted than the law judge found (see Tr. 300, 306).

In support of his argument the plaintiff merely cites to a medical dictionary and the Merck Manual for symptoms that "may" be caused by spondylosis, such as sensory loss and muscle weakness (Doc. 10, pp. 17-18). However, physical examinations of the plaintiff show a normal sensory system, normal muscle strength, and no muscle atrophy.

Moreover, the radiologist's opinion that the plaintiff's disc herniations "are likely causing discogenic pain" is not even inconsistent with the law judge's credibility determination. Thus, the law judge did not find that the plaintiff was pain-free or without limitations due to back problems.

Rather, the law judge found that the plaintiff's degenerative disc disease was a severe impairment, and the law judge "reduced the residual functional capacity [to light exertional work] to account for reasonable limitations resulting from the claimant's degenerative disc disease" (Tr. 36). In sum, the plaintiff has failed to show that his spine abnormalities cause debilitating functional limitations which compelled the law judge to credit fully the plaintiff's subjective complaints. See Adefemi v. Ashcroft, supra.

The plaintiff also asserts that the law judge improperly considered his activities of daily living in discounting his credibility because his activities of driving, shopping and computer job searches are not "in any way inconsistent with his assertion that he cannot perform sustained work activities" (Doc. 10, pp. 18-19). However, the law judge reasonably stated that those activities are inconsistent with the plaintiff's previous statements that he "can hardly get out of bed"; "the pain is so bad I can't sit at a desk"; and that the pain and fatigue prevent him from "doing simple task[s] such as walking, lifting and driving" (see Tr. 35, 126). Therefore, the contention that the law judge improperly considered his daily activities is meritless.

Notably, it is clearly proper for the law judge to consider activities of daily living in assessing the plaintiff's credibility. Macia v.

Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed.

Appx. 853, 856 (11th Cir. 2008). In fact, daily activities are one of the factors

to be considered in a credibility determination that the plaintiff complains the

law judge failed to address (Doc. 10, p. 16).

The plaintiff also argues that the law judge impermissibly

considered the plaintiff's statement to Dr. Ewen that a typical day for him

includes getting on the computer and looking for work (id., pp. 19-20). Thus,

the plaintiff reported to Dr. Ewen during the alleged disability period that

"[h]e continues to apply for jobs online but has so far been unsuccessful" (Tr.

235; see also Tr. 236 (in describing his daily activities to Dr. Ewen he noted

"gets on the computer and looks for work")).   The law judge reasonably

inferred that the plaintiff's continued search for a job "tend[s] to suggest that

the claimant might not feel he is truly incapable of working and that the

underlying reason for his disability application may be something other than

medical disability" (Tr. 35).  This inference is further supported by the

plaintiff's comments to a social security representative that the "economy has

really taken a toll" and that his efforts to find a job have been unsuccessful

(see Tr. 145).

The plaintiff argues that the law judge should not have considered the statement about looking for work because there is no evidence regarding whether he continued to look for work after making that statement (Doc. 10, p. 19). This argument is frivolous. The salient point is that the plaintiff was searching for work at the same time he was representing to the Social Security Administration that he was disabled from working. The law judge could reasonably infer that this circumstance undermines the plaintiff's credibility.

In sum, the plaintiff's petty arguments in support of the contention that the law judge's "reasons for discrediting [the plaintiff's] testimony are not supported by substantial evidence" (id., p. 20) are not only meritless, but wearisome. Accordingly, the contention should be rejected.

C. The plaintiff's final argument is that the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that the plaintiff can perform (id., pp. 20-24). This argument is similarly baseless.

The law judge found, based on the testimony of a vocational expert, that the plaintiff could perform the jobs of sales attendant, fast food worker, and courier (Tr. 37-38, 69). The pertinent hypothetical question

which elicited this response from the vocational expert directed the vocational

expert to assume (Tr. 68-69):

> a right hand dominate individual with the claimant's education and past work, would be limited to lifting 20 pounds occasionally, ten pounds frequently, sit up to six hours per day; stand or walk six hours per day; would also be limited to simple, routine tasks and/or ordinary and routine changes in work setting or duties; no rapid production rate pace or quota-type work – I know there's some quota to any job, I'm referring to the rapid type –frequent interaction with the public, coworkers or supervisors and maintain his attention and concentration for only two hours and then would require a ten minute break.

The plaintiff argues that the pertinent hypothetical question

"failed to include the limitations as set forth in the opinions the ALJ

specifically credited" (Doc. 10, p. 20). In particular, the plaintiff argues that

the law judge failed to include all of the functional limitations opined by Dr.

Ehrlich, and the limitations alleged by the plaintiff in his hearing testimony

(id., pp. 22, 23).

"In order for a vocational expert's testimony to constitute

substantial evidence, the ALJ must pose a hypothetical question which

comprises all of the claimant's impairments." Ingram v. Commissioner of

Social Security Admin., supra, 496 F.3d at 1270. However, the law judge is

not required to include restrictions in the hypothetical question that he properly finds are unsupported.   Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161.

As discussed above, the law judge did not credit Dr. Ehrlich's opinion in its entirety, or find the plaintiff fully credible. The law judge, furthermore, gave ample reasons supported by substantial evidence for these findings.   Accordingly, the law judge was not required to include in the pertinent hypothetical question limitations that have been properly rejected. Id.

Finally, the plaintiff contends that his moderate difficulties in concentration, persistence or pace are not accounted for in the residual functional capacity or the pertinent hypothetical question to the vocational expert (Doc. 10, pp. 22-23). The law judge found that the plaintiff's moderate difficulties in concentration, persistence, or pace were accommodated by limitations to (Tr. 33):

> simple routine tasks; ordinary and routine changes
> in work settings or duties; and no rapid production
> rate, pace, or quotas. The claimant can ... maintain
> and concentrat[e] for two hours at a time, but then
> needs a ten-minute break.

The plaintiff argues first that the law judge cited no support for the finding that the plaintiff could "maintain and concentrat[e] for two hours at a time, but then needs a ten-minute break" (Doc. 10, p. 23). The law judge, acting in his role as fact finder, see 20 C.F.R. §404.1520a, and "[a]fter consideration of the entire record" (Tr. 33) properly made this finding. The plaintiff does not cite to any credited medical opinion that the plaintiff cannot concentrate for two hours at a time (see Doc. 10, p. 23). Therefore, this contention is unpersuasive.

The plaintiff also argues that the finding he can concentrate for two hours at a time "amount[s] to no concentration limitation[] at all" because the typical job permits breaks at a two-hour interval (id.). In this regard, the plaintiff cites to SSR 96-9p, which states that, with regard to sedentary work, "an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." 1996 WL 374185 at *6 (S.S.A. 1996). This citation is inapposite because the plaintiff was found capable of light work (Tr. 33). Regardless, even assuming the same break schedule generally applies to light exertional jobs, the plaintiff has not shown the law judge erred by including this finding in the mental residual functional

capacity. Thus, the law judge's inclusion of a two-hour concentration limitation simply insures that the vocational expert identifies only jobs that provide such a schedule.

The plaintiff's last contention is that the law judge's "finding of moderate limitations in concentration, persistence or pace cannot be accounted for by his finding of 'simple routine tasks'" (Doc. 10, p. 23). In this regard, the plaintiff relies primarily on Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180-81 (11th Cir. 2011). However, Winschel does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace (id.). Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks. See Washington v. Social Security Administration, Commissioner, 2013 WL 150237 (11th Cir.)(unpub. dec.); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874 (11th Cir. 2012) (medical evidence demonstrated that the performance of simple, routine and repetitive tasks adequately accounts for a moderate limitation in ability to

maintain concentration, persistence, or pace); <u>Scott</u> v. <u>Commissioner of Social Security</u>, 495 Fed. Appx. 27 (11th Cir. 2012) (medical evidence demonstrated that the plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace); <u>Jarrett</u> v. <u>Commissioner of Social Security</u>, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (medical evidence supports the conclusion that the plaintiff could perform simple tasks notwithstanding a moderate limitation in maintaining concentration, persistence, and pace).

In this case, the evidence shows that the plaintiff's moderate deficit in concentration, persistence or pace is accommodated by a job which involves, for no more than two hours at a time, "simple routine tasks [with] ordinary and routine changes in work settings or duties; and no rapid production rate, pace, or quotas" (Tr. 33). In this regard, the law judge made an explicit finding that "simple routine tasks and no rapid production, rate, pace or quotas" are "appropriate" accommodations for the plaintiff's moderate limitation in concentration, persistence, or pace (see Tr. 36). Further, the law judge specified in the pertinent hypothetical question to the vocational expert that the plaintiff could concentrate for no more than two hours at a time (Tr. 69).

Moreover, the record shows that the plaintiff can perform simple, routine tasks notwithstanding his concentration deficits. Thus, Dr. Ewen opined that, despite moderate attention and concentration problems (Tr. 238), the plaintiff was "goal directed," had intact remote and immediate memory, "appears fully capable of appropriately perceiving, understanding and abstracting his environment," and "appears able to concentrate on tasks requiring immediate attention" (Tr. 238-39). Notably, the plaintiff told Dr. Ewen that he "feels able to handle simple tasks" (Tr. 237). Moreover, Dr. Ehrlich said that the plaintiff had no impairment in his ability to understand and remember simple instructions, and only a mild impairment in carrying out simple instructions (Tr. 311). The plaintiff's activities of watching television and using a computer "all day" and his hobby of following the stock market underscore the plaintiff's ability to at least perform simple, routine tasks for a sustained period of time (Tr. 158, 236).

In sum, there is ample evidence in the record to support the finding that the plaintiff's moderate concentration deficit is accommodated by the limitations included in the plaintiff's mental residual functional capacity. Therefore, this case is distinguishable from <u>Winschel</u> (and <u>Richter</u> v. <u>Commissioner of Social Security</u>, 379 Fed. Appx. 959 (11th Cir. 2010)).

Accordingly, the plaintiff's argument that his moderate deficit in concentration, persistence or pace cannot be accommodated by a limitation to simple, routine tasks with additional restrictions is meritless.

IV.

For the foregoing reasons, I recommend that the decision of the Commissioner be affirmed.

Respectfully submitted,

*Thomas G. Wilson*

DATED: MAY 21, 2013

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).